UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAZMINE WRIGHT, on behalf of herself and all others similarly situated,

Plaintiff,

v.

CULTURE KINGS USA, INC.,

Defendant.

---

Docket No.

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, JAZMINE WRIGHT ("Plaintiff" or "Ms. Wright"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, JOSEPH & NORINSBERG, LLC, brings this action against CULTURE KINGS USA, INC. ("Culture Kings" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce website, www.culturekings.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff JAZMINE WRIGHT is a legally blind resident of Bronx, New York. On May 2, 2024, she sustained catastrophic ocular injuries following a chemical assault involving a highly caustic acidic substance. Medical documentation from Dr. Anthony Terracciano, MD, confirms full-thickness corneal burns and epithelial sloughing, resulting in permanent bilateral blindness. (See Exhibit A)

2. Ms. Wright is a highly proficient user of NonVisual Desktop Access (NVDA) screen reader software, which she relies on to independently navigate digital interfaces. Her

fluency with screen-reading protocols and keyboard navigation enables her to access ecommerce platforms, evaluate product information, and complete transactions without assistance. NVDA's compatibility with her assistive technology is essential to her autonomy and digital access.

3. Defendant owns and operates www.culturekings.com, a commercial website offering streetwear, accessories, and personal care products to consumers throughout the United States. Despite its public-facing ecommerce model and national reach, Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired users, thereby denying Plaintiff and similarly situated individuals full and equal access to its goods and services in violation of the ADA.

4. On multiple occasions in September and October 2025, Plaintiff attempted to access www.culturekings.com using NVDA screen reader software. Her intent was to browse and purchase products from Culture Kings' "New Arrivals" collection, including items marketed for chemically sensitized skin and post-injury care. These products were selected based on her specific needs and Culture Kings' reputation for curated global brands.

5. Plaintiff was unable to complete her intended transactions due to persistent digital access barriers. These included unlabeled buttons, inaccessible modal dialogs, broken skip links, and ARIA implementation errors that rendered key content—including product descriptions, pricing, and checkout functionality—unreadable by screen reader software. A SortSite audit of www.culturekings.com revealed over 700 violations of WCAG 2.1 Level A and AA standards, including:

- Duplicate element IDs and malformed HTML attributes

-  Autoplaying videos without pause controls
-  Empty headings and inaccessible form fields
-  Broken links to product pages, customer service portals, and loyalty program terms
-  Decorative images misused as interactive elements without accessible names

6. Defendant Culture Kings USA Inc. is a Delaware corporation with its principal office located at 100 Montgomery Street, Suite 1600, San Francisco, California. It is registered to conduct business in multiple states, including Tennessee and Mississippi, and operates www.culturekings.com as a nationwide ecommerce platform targeting U.S. consumers. Defendant's website is a place of public accommodation under 42 U.S.C. § 12181(7) and is subject to the accessibility requirements of Title III of the ADA.

7. Plaintiff specifically sought out Culture Kings over other retailers due to its reputation for exclusive product drops, curated collections, and direct-to-consumer ecommerce offerings. As a blind consumer, she depends on accessible digital interfaces and descriptive labeling to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to sighted customers.

8. Plaintiff seeks a permanent injunction requiring Defendant to implement corporate policies, practices, and procedures that ensure www.culturekings.com is brought into compliance with WCAG 2.1 Level AA standards and remains accessible to blind and visually impaired users. Without such remediation, Plaintiff and similarly situated individuals will continue to be excluded from Defendant's digital storefront and denied equal access to its services.

9. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate

policies, practices, and procedures to ensure that its website becomes and remains accessible to blind and visually impaired users.

## THE PARTIES

10. Plaintiff, JAZMINE WRIGHT, is and was at all relevant times a resident of Bronx County, New York.

11. Plaintiff is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). As confirmed by Dr. Anthony Terracciano, MD, of the New York State Office of Children and Family Services Commission for the Blind, Plaintiff sustained full-thickness corneal burns and epithelial sloughing following a chemical assault on May 2, 2024. She has no remaining functional vision and is unable to read printed materials. Plaintiff relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to access digital content. She has been referred for assistive technology evaluation and orientation and mobility training to support her independence and quality of life.

12. Upon information and belief, Defendant CULTURE KINGS USA, INC. is a Delaware corporation with its principal business address located at 100 Montgomery Street, Suite 1600, San Francisco, California. Defendant is registered to conduct business in multiple states, including Tennessee and Mississippi, and operates the website www.culturekings.com, which offers consumers nationwide access to Culture Kings-branded and third-party streetwear, accessories, and personal care products. Defendant markets and sells its products directly to consumers in New York and across the United States through its interactive ecommerce platform.

13. Defendant's website functions as a commercial place of public accommodation subject to Title III of the ADA and the NYCHRL. At all relevant times, Defendant has maintained control over the design, coding, and digital infrastructure of www.culturekings.com and is responsible for ensuring its compliance with applicable accessibility standards, including the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Although the website includes superficial references to accessibility, it lacks meaningful ARIA labeling, semantic structure, and keyboard operability across key interactive features. A SortSite audit conducted on October 19, 2025, revealed over 700 violations of WCAG 2.1 Level A and AA standards, including missing alt text, broken skip links, inaccessible buttons, autoplaying videos without pause controls, and redundant link structures. These deficiencies render the website inaccessible to blind users and place Defendant on constructive notice of noncompliance.

## **NATURE OF ACTION**

14. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

15. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and

communicating—for sighted, blind, and visually impaired individuals alike.

16. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

17. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

18. Plaintiff, Jazmine Wright is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

19. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."
>
> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

20. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

21. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

22. Plaintiff JAZMINE WRIGHT is a legally blind consumer residing in Bronx County, New York. She relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to access digital content and conduct online transactions. Plaintiff receives ongoing care from the New York State Office of Children and Family Services Commission for the Blind and has been referred for assistive technology evaluation and orientation and mobility training to support her independence and quality of life.

23. On September 23 and October 11, 2025, Plaintiff attempted to access Defendant's consumer-facing website, www.culturekings.com, to research and purchase streetwear products

marketed for women. Specifically, she sought items from Culture Kings' "New Arrivals" collection, including the *Loiter Drop Out Vintage T-Shirt*, *Carre Premium Essentials Sweat Shorts*, and *Puma Women's Speedcat OG Leopard*. These products were selected based on their advertised comfort, styling, and suitability for post-injury wear. Plaintiff's selection was not arbitrary—she sought soft, breathable, and adaptive clothing that would support her physical recovery and personal expression. Culture Kings' curated offerings were uniquely positioned to meet those needs.

24. Plaintiff encountered persistent access barriers that rendered the website incompatible with NVDA. Specifically:

-  Interactive elements such as "Quickadd," "Shop Now," and "Subscribe" lacked ARIA labels and failed to announce their function or state.
-  Core navigation menus used broken skip links, empty headings, and redundant link structures, disrupting keyboard focus and logical reading order.
-  Product images lacked descriptive alt text, rendering visual content inaccessible.
-  Modal dialogs, promotional banners, and carousel elements were not properly labeled or dismissible via keyboard commands, trapping focus and obstructing navigation.

25. The following day, on October 12, 2025, Plaintiff's counsel conducted a forensic audit of www.culturekings.com using the SortSite Accessibility Validation Tool. The scan confirmed widespread violations of WCAG 2.1 Level A and AA standards, including:

-  Over 700 pages with malformed HTML attributes and duplicate element IDs
-  Missing alt text, empty buttons, and inaccessible form controls across product and checkout flows

-  Broken links returning HTTP 429 “Too Many Requests” errors, including links to /collections/mens, /collections/new-arrivals, and /pages/about-culture- kings
-  ARIA inconsistencies, Nonscript elements, and empty headings disrupting semantic
-  Autoplaying videos and promotional carousels without pause controls, violating WCAG 2.1 A 2.2.2

26. These barriers were not theoretical—they appeared on the exact pages Plaintiff attempted to access and rendered the site incompatible with NVDA screen-reading software. Plaintiff’s exclusion was real, repeatable, and corroborated by forensic evidence. The website’s failure to provide accessible labeling, navigation, and transactional functionality denied Plaintiff equal access to the goods and services offered to non-disabled consumers.

27. Culture Kings’ website is not a passive marketing tool—it is a fully integrated ecommerce platform central to its revenue model. The site offers direct-to-consumer sales of its entire product line, including exclusive drops, promotional bundles, and loyalty program enrollment. It also serves as the sole gateway to Culture Kings’ customer support, brand engagement, and mobile app downloads. Defendant’s reliance on www.culturekings.com for nationwide sales places it squarely within the scope of Title III of the ADA.

28. Defendant has previously received public and private notice of its accessibility failures, including consumer complaints and automated audit findings. Despite these warnings, Defendant has failed to remediate its website. The same barriers persist across product, checkout, and support flows, demonstrating a pattern of noncompliance and disregard for accessibility obligations.

29. Plaintiff remains highly motivated to return to www.culturekings.com once it is made accessible. Her interest is concrete and ongoing, rooted in her need for adaptive clothing, digital autonomy, and equal access to fashion and personal care products. Culture Kings' ecommerce offerings are not reliably available through third-party platforms or offline channels. Without remediation, blind and visually impaired consumers are categorically excluded from purchasing Culture Kings' products and engaging with its services. Defendant's failure to implement WCAG-compliant features constitutes a denial of full and equal access under Title III of the ADA.

## CLASS ACTION ALLEGATIONS

30. Plaintiff JAZMINE WRIGHT brings this action on behalf of herself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): All legally blind individuals in the United States who have attempted to access www.culturekings.com and were denied equal access to its services, offerings, and support due to persistent digital accessibility barriers during the relevant statutory period.

31. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): All legally blind individuals residing in the City and State of New York who have attempted to access www.culturekings.com and were similarly denied equal access to its offerings due to the same systemic barriers.

32. Common questions of law and fact exist among the Class, including:

- Whether www.culturekings.com qualifies as a "public accommodation" under Title III of the ADA;

- Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Culture King's products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

33. Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

34. Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

35. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

36. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

37. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds,

if not thousands, of blind individuals who have attempted to use and faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

38. Plaintiff, JAZMINE WRIGHT, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

39. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

40. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

41. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

42. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps

> would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

43. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

44. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

45. Plaintiff, JAZMINE WRIGHT, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

46. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

47. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

48. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.culturekings.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

49. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

50. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

51. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

52. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in

order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

53. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

54. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

55. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

56. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

57. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law) ("NYCRL")**

58. Plaintiff, JAZMINE WRIGHT, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

60. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

61. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") §

40-c.

62. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

63. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

64. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

65. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

66. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*.

67. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

68. Plaintiff, JAZMINE WRIGHT, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

70. Defendant is subject to NYCHRL because it owns and operates the Website www.culturekings.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

71. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

72. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability

to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

73. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

74. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

75. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

76. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

77. Plaintiff is also entitled to compensatory damages, as well as civil penalties and

fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

78. Plaintiff is also entitled to reasonable attorneys' fees and costs.

79. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

80. Plaintiff, JAZMINE WRIGHT, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

82. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.,

N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
October 24, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com